The Chief Justice
delivered the opinion of the court.
This was an action of ejectment. On the trial, the lessor of the plaintiff produced in evidence a patent from the commonwealth to William Hays, for a pre-emption of 1000 acres, bearing date the 10th of January, 1785, and a deed *297 of conveyance from the heirs of William Hays to himself, bearing date the 8th day of January, 1817, and purporting to convey “all the right, title, interest and claim which they “have in law or equity, in and to all the lands situated and “being in Kentucky, which they may be entitled to as heirs “of William Hays, deceased."
He proved the death of Hays, the boundary of the tract of land, and that the defendants were in possession.
The defendants, on their part, produced a deed of conveyance from Hays to James Calloway, for the same tract of land, expressing to be made for the consideration of five shillings, and bearing date the 6th of March, 1788, and they proved by Caleb Calloway that in 1781 or 1782, a certain Thomas Brooks proposed to sell to him a bond which be held on Hays for the conveyance of the tract aforesaid; and that before he would make the contract with Brooks he went to Hays, who informed him that there was no objection to the bond, and that he would make a deed to any one who would bring the bond to him; that he afterwards made a verbal contract with Brooks, and paid him a negro man for the bond, and received it without an assignment, Brooks refusing to assign it: That subsequently thereto he sold the land to James Calloway for about the same amount which he had given for it; and being authorised by James Calloway to do so, he procured a conveyance to him from Hays, to whom he delivered the bond for a conveyance to Brooks.
The lessor of the plaintiff then proved by a witness, that in the year 1780 or 81, Hays and one Hoy made a horse race, on which Hays bet with Hoy the one half of his, Hays’s, pre-emption; that the race was run at Boonsboro’, and was won by Hoy. The witness did not know that Hays had given his bond to any person for one half of the pre-emption thus lost, but knew that it was his mode of transacting business of that sort, to have the bonds drawn and staked, but whether it was so drawn in this case, he did not know, nor did he know that Brooks had any thing to do with the race, or that he was any way concerned; nor did he know any thing of Hays’s loosing, or of Hoy’s winning the other half of the pre-emption. The lessor of the plaintiff also proved, by another witness, that he was well acquainted with Hays, and Hoy, and Brooks; that they were in the habit of racing at Boonsborough in the year 1781 and 82, and connected in that kind of business; that *298 he lived in the same station with Hoy and Brooks, and heard that a race had been run between Hoy and Hays, in which Hoy had won of Hays his pre-emption of 1000 acres. He also frequently heard that it had been so arranged between the parties, that the statute against gaming would be defeated of its operation. Of these facts he had no knowledge, except by report from others, but thinks he heard the same from the parties. He knew nothing of any bond from Hays to Brooks, or of any bond being executed for the land lost as aforesaid.
A deed of conveyance from heirs, purporting to pass only the right they may have, and not of a certain specified tract, places the vendee not in the favored attitude of a creditor or puchaser, but only in the shoes of the heirs; if the heirs cannot recover, neither can their vendee.
*298 On this evidence, the counsel for the lessor of the plaintiff moved the court to instruct the jury that if they should be of opinion that no consideration was paid to Hays, that the deed from him to Calloway passed no title; or that if they should find that the deed was executed by Hays in consideration of a gaming transaction, or horse race, that it was void. The court refused to give the instructions as asked for, but instructed the jury, that if James Calloway, under whom the defendants claim, was a purchaser for a good and valuable consideration, the law would support such purchase, although the consideration might not have passed to Hays from Calloway, provided that Calloway purchased without any participation in, or knowledge of, the unlawful gaming between Hays and Hoy, and that if Calloway was an innocent purchaser for a valuable consideration without notice of the original illegal consideration, his purchase was in law protected from the operation of the statute against gaming. And furthermore instructed the jury, if they should believe from the evidence that Caleb Calloway was induced to purchase the bond for the land in contest, of Brooks, by the assurances of Hays that it was good, it was a sufficient consideration to support the deed from Hays to James Calloway, provided Caleb Calloway was ignorant of the illegal consideration. To the opinion of the circuit court the lessor of the plaintiff excepted, and a verdict and judgment having been rendered against him, he has appealed to this court.
The main question presented by the record is, whether the deed from Hays to Calloway is valid or not?
The validity of the deed is attempted to be impeached by the instructions asked for on the part of the lessor of the plaintiff, on the ground either that there was no consideration paid to Hays, or that the consideration was a gaming one. In revising the decision of the circuit court *299 upon these points, it is proper to premise, that as the deed from the heirs of Hays to the lessor of the plaintiff purports to convey to him, not the specific tract of land in controversy, but only their right to such lands as they were entitled to as heirs, it is obvious that he cannot occupy a more favorable attitude in this contest than they themselves would have done had they been seeking to recover the land in their own names, and of course if the deed from Hays to Calloway is valid as against them, it must be equally so as against the lessor of the plaintiff.
The statement of a valuable consideration is indispensable to a deed of bargain and sale, but its adequacy can never be questioned between the grantor and his heir and the grantee; creditors and purchasers alone can throw that point in issue.
The lessor of pltf in ejectment cannot aver or prove that there was no consideration for a deed against which he claims, where one is expressed, but he may shew the consideration was vitious, and deft may prove by evidence de hor the deed that the consideration was legal, though different from that expressed Vide 1st Marsh. 582, acc
*299 To the efficacy of a deed of bargain and sale, a valuable consideration is no doubt indispensable for a sale ex vi termini implies a recompense or consideration. But it is only as against creditors and purchasers that an adequate consideration is necessary. As against the bargainor and his heirs, or those who represent their rights only, the quantum of consideration is immaterial. The consideration therefore expressed to be received by Hays, in the deed from him to Calloway, is, notwithstanding its apparent inadequacy, sufficient to render the deed operative as against the bargainor and his heirs. And where a deed thus expresses a sufficient consideration upon which it purports to have been made, an averment or proof that there was no consideration is inadmissible. Shep. Souckstone, 222, 1 Bac. Abr. tit. Bargain and Sale, letter D.
The instruction to the jury, therefore, that if they should be of opinion that no consideration was paid to Hays, the deed from him to Calloway passed no title, being asked for on the predication of a fact which could not be averred or proved, was correctly refused by the circuit court.
But notwithstanding it was inadmissible to aver or to prove that there was no consideration for the deed, it was competent for the lessor of the plaintiff to shew that the consideration was vitious or illegal; for otherwise the policy of the law in making a deed, founded on such illegal consideration, void, would, by the parties expressing on the face of the deed a legal consideration, be defeated. If, however, it was competent for the lessor of the plaintiff to shew by evidence de hors the deed, that the consideration was illegal, it was equally competent for the defendant to repel such evidence by proof of a legal consideration, though different from that expressed in the deed. We are then led to enquire whether the circuit court erred in its decision upon the effect which the gaming consideration of *300 the bond given by Hays to Brooks ought to have in relation to the deed made by Hays to Calloway. The bond, on the supposition of its being founded on a gaming consideration, was, no doubt, void, and Hays was under no legal obligation to comply with it: but as Calloway was ignorant of the illegal consideration of the bond, and paid to Brooks a valuable consideration for it, the deed made to him cannot be affected by the illegality of the consideration of the bond: As between Calloway and Hays there was nothing illegal, and the true consideration of the deed is not what Hays received, but what was paid by Calloway Such would indisputably have been the case if the bond to Brooks had never existed, and Hays had conveyed to Calloway for the sum paid by the latter to Brooks; and we cannot perceive how the existence of the bond, which in law was a mere nullity, can change the case. A bond given to the lender by the borrower of money, upon usurious interest, is void; but if it be given by the borrower to a person not privy to the usurious agreement, and to whom the lender is justly indebted so much money, it cannot be avoided, by the usury. Cro. Ja. 32. So a bond given by the looser to the winner for the payment of money won at play, is void by the statute against gaming; but if the bond be given to a person to whom the winner is justly indebted in the same amount, and who is not privy to the money’s being won at play, it is held not to come within the statute. 3 Bac. Abr. title Gaming, letter B. 2 Mod. 279.
A bond for the conveyance of land given on a gaming consideration, imposes no duty on the obligor; but if for a valuable consideration, it comes into the hands of an innocent purchaser, & the obligor conveys to him, the obligor, his heirs, or those representing their interest, cannot question the consideration.
A bond given to the lender on usurious considerations, is void, but if to another not privy to the usury, and for a just debt due by the lender, the bond is valid—and so of a bond given for money won at play.
*300 In these cases, the consideration of the bond, executed by the borrower or looser, is the money justly due to the obligee and not the money borrowed or lost, and in this respect it is impossible to distinguish in principle, these cases from the one before the court.
The statute of Virginia against gaming, which was the only law in force at the date of the deed in question, in this case is manifestly based upon the same principle. For although the statute makes void conveyances, &c. to satisfy or secure money or other thing won, &c. whereof money or other thing won, &c. is a part or all of the consideration, and declares that such conveyances, &c. shall enure to the use of the heirs of the seller. Yet according to the language of the statute, it applies only to such conveyances as are made “to any person, or for his use, to satisfy or secure “money or other thing, by him won of, or lent, or advanced “to the seller, &c. or whereof money or other thing, so won *301 “or lent or advanced, shall be a part or all of the consideration money.”
In both cases the consideration is the money justly due to the obligee, and not the money lent or lost
The Virginia statute against gaming only vitiates deeds, &c. in the hands of the winner, or those who may receive a conveyance for the use of the winner.
Bibb for appellant, Crittendon for appellee.
Now it is evident that the conveyance in question in this case was not made to any person or for his use, to satisfy or secure money or other thing by him won, &c. and that the consideration of the conveyance was neither in whole, nor in part money so won, &c. That is money won, &c. by him, to whom the conveyance was made. According to the plain import of the statute against gaming, therefore the heirs of Hays could not recover against the deed made to Calloway, and of course of the lessor of the plaintiff only, who claims under the heirs, and to the extent of their right, cannot recover. The case of Reed vs. Harrod’s heirs, Pr. Dec. 290, is very similar in its prominent features to this; and in that case, the court gave the same construction to the statute, which we have done in this.
There was, therefore, no error in the refusal of the court to give the instructions asked for, by the lessor of the plaintiff, nor in the instructions the court gave to the jury.
The judgment must be affirmed with costs.